# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America ) | **FILED** |
| v.                        ) | Dec 11 2020 |
|                           ) Case No. 3:20-mj-71816 MAG | SUSAN Y. SOONG |
| MAYER BENEGAS-MEDINA      ) | CLERK, U.S. DISTRICT COURT |
|                           ) | NORTHERN DISTRICT OF CALIFORNIA |
|                           ) | SAN FRANCISCO |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **November 16, 2020** in the county of **San Francisco** in the **Northern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 843(b) | Use of a Communications Facility to Commit, Cause, or Facility the Commission of Drug Trafficking |

This criminal complaint is based on these facts:

See attached affidavit of DEA Special Agent Curtis Kingman.

☑ Continued on the attached sheet.

/s
*Complainant's signature*

Curtis Kingman, DEA Special Agent
*Printed name and title*

Approved as to form ___/s___
AUSA   Sailaja M. Paidipaty

Sworn to before me by telephone.

Date: 12/10/2020

*Judge's signature*

City and state: San Francisco, California

Laurel Beeler, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Curtis Kingman, a Special Agent of the Drug Enforcement Administration (DEA), being sworn, hereby declare as follows:

## INTRODUCTION

1. I submit this Affidavit in support of an application for a criminal complaint charging MAYER BENEGAS-MEDINA with violations of 21 U.S.C. § 843(b) (Use of a Communications Facility in Furtherance of Drug Trafficking).

2. The statements in this Affidavit are based on my own investigation; information from other law enforcement agents, investigators, and individuals with knowledge of this matter; my review of documents related to this investigation; and my training and experience as a DEA Special Agent. This Affidavit does not purport to set forth all of the evidence gathered to date in this investigation, or to name all of the persons who participated in these crimes; I have included only those facts and names that I believe are necessary to establish probable cause for the requested criminal complaint and arrest warrants.

## RELEVANT STATUTES

3. Title 21, United States Code, Section 843(b) criminalizes use of a communications facility in causing or facilitating the commission of a felony under the Controlled Substances Act, in this case, using a telephone to cause or facilitate the distribution of a controlled substance, constituting a felony under Title 21, United States Code, Section 841(a)(1).

## BACKGROUND OF INVESTIGATING AGENT

4. I am presently employed by the Drug Enforcement Administration, San Francisco Divisional Office, as a special agent and have been so employed since October 2019. I am currently assigned to the Oakland Resident Office.

5. Before becoming a DEA special agent, I was a POST certified police officer in the State of California for approximately six years. During my time as a police officer I worked

for the patrol division as a patrol officer and for the investigation division as a detective. As part of my official duties and assignments as a police officer and a detective, I investigated individuals suspected of violating California state law relating to the following: homicide, narcotics, sexual assault, and criminal street gangs. As a detective, I frequently prepared affidavits in support of search and arrest warrants.

6. I have conducted hundreds of probable cause arrests for violations of state and federal criminal statutes. I have interviewed arrested persons, seized and searched cellular phones, analyzed cellular phone records, and prepared cases for prosecution.

7. I have attended and completed several law enforcement schools and advanced officer trainings, including but not limited to the California Peace Officer Standards and Training Basic Police Officer training (880 hours) and DEA Basic Agent training (550 hours). I graduated from San Diego State University with my Bachelor of Science degree in Criminal Justice and Political Science.

8. As a DEA special agent, I investigate a variety of federal drug crimes, including but not limited to violations of 21 U.S.C. §§ 841, 843(B), 846, and 848. During my investigations, I have seized drugs and arrested individuals, worked with cooperating sources and defendants, and became familiar with the methods and practices used by drug traffickers to distribute and store drugs and launder the proceeds from their drug dealing activity. I have conducted electronic and visual surveillance, questioned witnesses, executed search and arrest warrants, and worked with confidential sources and undercover agents.

9. I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including the target offenses.

**STATEMENT OF PROBABLE CAUSE**

I. **Overview of Investigation**

10. Since June 2018, Special Agents with the Drug Enforcement Administration (DEA) – Oakland Resident Office (ORO) have been conducting an investigation into the

trafficking of fentanyl in the greater San Francisco Bay Area. During the course of the investigation, agents identified the CRUZ drug trafficking organization (DTO) run by Emilson Jonathan CRUZ Mayorquin and his mother, LEYDIS Yaneth Cruz, (the CRUZ DTO). Agents believe CRUZ, LEYDIS, and their associates, including Pamela CARRERO (CRUZ's sister / LEYDIS's daughter), IVAN Mauro Cruz Mayorquin (another CRUZ family member), Ana MALDONADO (CRUZ's significant other), Adonis TORRES (CARRERO's significant other), and others supply narcotics for resale to multiple local narcotics re-distributors. Members of the DTO also engage in street-level drug sales where they sell narcotics to individual drug users. The investigation revealed that many members of the DTO live in the East Bay, but routinely travel to the Tenderloin neighborhood of San Francisco to sell drugs on the street.

11. During the course of the investigation, the DEA, with assistance from the U.S. Attorney's Office, received Court-authorization on two occasions to intercept wire communications over telephones used by CRUZ, LEYDIS, and CARRERO. Nos. 20-xr-91128 JST, 20-xr-91438 JST. These calls, along with physical surveillance conducted by agents and undercover purchases of drugs, revealed the scope of the operations of the CRUZ DTO.

12. BENEGAS, using a telephone number ending in -9393, was one of the individuals intercepted speaking with CRUZ regarding narcotics trafficking.

13. For example, on November 16, 2020, at approximately 6:36 p.m., agents intercepted a call from BENEGAS to CRUZ. CRUZ said he was "heading over to them" and was going to bring "the 11 grams and $100" that he owed BENEGAS. BENEGAS responded that CRUZ owed him $300. CRUZ asked, "[F]rom where?" CRUZ noted that he gave BENEGAS "18 grams of that other one." The two then agreed to discuss in person.

14. Based on my training and experience, I believe that during this call CRUZ informed BENEGAS that he was on his way to wherever BENEGAS was located and was bringing over 11 grams of an unidentified narcotic in addition to $100 that CRUZ owed to BENEGAS. In response, I believe BENEGAS was indicating that CRUZ owed him additional money. When CRUZ responded that he had given BENEGAS "18 grams of that other one," he

was indicating that his debt to BENEGAS was lower than BENEGAS believed because CRUZ had provided BENEGAS with other drugs. Based on my training and experience, I know that drug dealers often provide drugs to each other on consignment, a practice called "fronting." Once the drugs are resold, the supplier receives full payment. I know that co-conspirators often provide each other with drugs and maintain running accounts of the amounts of money that they owe to each other.

15. Later the same day, at approximately 7:51 p.m., CRUZ called BENEGAS and asked if BENEGAS would lend him some "pink." BENEGAS agreed and said that he had it ready. CRUZ asked if BENEGAS was leaving already. BENEGAS said, "8 PM." He asked if CRUZ wanted him to "bring it over there." CRUZ said, "yes."

16. Based on my training and experience and knowledge of this investigation, I believe that during this call CRUZ asked BENEGAS to lend him fentanyl of the pink variety. During this investigation, I learned that drug traffickers refer to varieties of fentanyl based on the color that the substance emits when it is burnt. Throughout the investigation, agents have purchased or intercepted calls discussing "blue," "pink," and "yellow" fentanyl. In response, BENEGAS indicated that he had "it" ready – meaning he could provide the requested drugs. Further, I know that CRUZ and BENEGAS both live in the East Bay. I also know that CRUZ often sells drugs on the streets of the Tenderloin in the evening hours. Therefore, I believe that when CRUZ was asking BENEGAS when he was "leaving," CRUZ was asking when BENEGAS would be traveling from the East Bay to San Francisco. In response, I believe that BENEGAS indicated that he would be leaving in approximately ten minutes (8 p.m.) and was offering to bring the requested pink fentanyl to CRUZ in San Francisco ("bring it over there").

17. On December 10, 2020, agents executed a federal search warrant at an address on Lomo Vista Way in Oakland, California. Four individuals, included BENEGAS were inside the residence. Agents located a phone that BENEGAS confirmed was his. Agents then called the number ending in -9393 that was intercepted speaking to CRUZ, and which they previously suspected belong to BENEGAS. At that time, BENEGAS's phone rang.

## CONCLUSION

18.     In sum, I believe that BENEGAS is a drug dealer who receives drugs from and supplies drugs to CRUZ.  Those drugs are then resold.  I further believe that the intercepted calls establish that BENEGAS uses his telephone in order to facilitate his drug trafficking activity.  Based on the foregoing facts that there is probable cause to believe BENEGAS has violated 21 U.S.C. § 843(b).

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

/s

_____
Curtis Kingman
Special Agent
Drug Enforcement Administration


Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this __10th__ day of December 2020.

_____
HONORABLE LAUREL BEELER
United States Magistrate Judge