DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SAILAJA M. PAIDIPATY (NY5160007)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, CA 94102-3495
    Telephone: 415-436-7200
    Fax: 415-436-7234
    sailaja.paidipaty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, </br></br> Plaintiff, </br></br> v. </br></br> EMILSON CRUZ MAYORQUIN, </br>    a/k/a "Playboy" </br></br> Defendant. | CASE NO. 20-0480-1 WHA </br></br> MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION TO DETAIN DEFENDANTS PENDING TRIAL </br></br> Hearing date: December 21, 2020, at 10:30 am |

I.    **INTRODUCTION**

Emilson Cruz Mayorquin, known on the streets as "Playboy," is a leading distributor of fentanyl in this District. As the co-leader of the family business along with his mother, Leydis,[1] Cruz sold kilograms of fentanyl to drug users and other drug suppliers. Despite multiple prior arrests and deportations, Cruz remained undeterred continuing to re-enter the United States and capitalize on the drug trade. Intercepted calls reveal why – Cruz anticipates returning to his home country of Honduras after making enough money selling drugs in the Bay Area. Calls reveal that Cruz is building a home in

---

[1] Because numerous defendants in the case share the same last name, the government references some defendants by their first names throughout this memorandum.

Honduras where his young daughter lives, as well as other family members such as his brother. Cruz's family in the United States – his mother, sister, uncle, and girlfriend – are all co-defendants in this case. Beyond ties to drug trafficking, Cruz has no connection to the Bay Area and therefore no reason for him to stay if released.

Further, the danger to the community should Cruz be released is immense. Cruz had no reservation about selling a lethal drug to users and resellers alike. In fact, on one intercepted call, Cruz commented that selling to street-level users helped business because those customers provided his phone number to other drug resellers who bought larger quantities. Cruz capitalized on addiction to make money. While Cruz may claim that is in the past, if released, Cruz would still have access to his drug contacts. Access to drugs is access to money. Cruz can once again sell fentanyl, make quick money, and then flee to Honduras where family is waiting.

The law presumes that no condition or combination of conditions can reasonably assure Cruz's appearances as required and Cruz cannot rebut this presumption. The government agrees with U.S. Pretrial Services that the Court should detain Cruz pending trial.

## II.   LEGAL STANDARD

To detain a defendant pending trial, the Court must find by a preponderance of the evidence that there are no conditions that will reasonably assure the defendant's appearance as required, or find by clear and convincing evidence that there are no conditions which reasonably will assure the safety of any person or the community. 18 U.S.C. § 3142(f).

In cases such as this, where there is probable cause to believe that the Defendant violated the Controlled Substances Act and faces a maximum of 10 years or more in prison, there is a rebuttable presumption that no condition or combination of conditions reasonably will assure the defendant's appearance as required and the safety of the community. *Id.* § 3142(e)(3)(A). The burden of production then shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citing *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). Although the presumption is rebuttable, it is not a "bursting bubble." *United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir. 1985) (Breyer, J.). In other words, the presumption is not so weak that whenever the defendant introduces evidence, "the presumption 'bursts' and totally disappears, allowing the judge (or jury) to decide the question without

MEMO. I/S/O GOVT'S MOT. TO DETAIN
20-0480-1 WHA                                              2

reference to the presumption." *Id.* Since a defendant can "always provide the magistrate with *some* reason … a 'bursting bubble' approach might render the presumption virtually meaningless, contrary to Congress's clear intent." *Id.* (emphasis added).

If the Court finds that the defendant has rebutted the statutory presumption of detention, the Court considers four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

Here, Cruz cannot overcome the presumption in favor of detention. His extensive international ties establish that no conditions of release can mitigate the risk of flight. Moreover, the nature and circumstances of the current offense, specifically the volume of fentanyl involved in the crime, show that Cruz poses a considerable danger to the community.

### III.  ARGUMENT

#### A.  Cruz's international ties render him a significant flight risk.

As alleged in the Complaint and Indictment, drug dealing is the Cruz family business. Several of Cruz's family members are implicated in the current case. And while that may indicate that Cruz has ties to this country, albeit criminal ties, intercepted calls indicate that Cruz's time in the United States is intended to be brief and that after making enough money, he will return to Honduras. Specifically, the calls show that Cruz is building a home in Honduras and that he sends the money that he makes on the drug trade in the Bay Area abroad. For example, during an intercepted phone call on August 26, 2020, Leydis spoke with a family member abroad about a house that Emilson is constructing in Honduras. An excerpt of the conversation follows:[2]

| LEYDIS | Emilson is also stressed here with work so then he gets stressed with…[audio glitch]… he stresses her, and they |

---

[2] The original call was conducted in the Spanish language. Spanish linguists prepared the transcript referenced here, which was provided by the government to defense counsel.

| | | |
|---|---|---|
| 1 | | are just like that, just problems, so then… mainly where it |
| 2 | | could me more relaxed is in Honduras. Life here is a little |
| 3 | | stressed because… thing is that Emilson has a lot of |
| 4 | | customers and one calls him, another one calls him, how |
| 5 | | can there be no stress. |
| 6 | RELATIVE | Yes, because there are times when he's talking with… |
| 7 | | [Aside: wait mami, we can talk later]…Look, he's |
| 8 | | removing the ceramic from the house, he's going to put |
| 9 | | porcelain. [U/I] how can I say no to him. |
| 10 | LEYDIS | [U/I] |
| 11 | RELATIVE | Let's give him the satisfaction. That house is not going to |
| 12 | | look like a house, it's going to look like a mansion. With |
| 13 | | everything that he's asking. |
| 14 | LEYDIS | My God, thing is that Emilson doesn't stop spending, right? |
| 15 | | |
| 16 | | […] |
| 17 | RELATIVE | I told everyone, [U/I] a garage in his house. He said, here in |
| 18 | | the name of [U/I]. This guy wants to leave it like a, like |
| 19 | | what can I tell you… Look, with everything that that man |
| 20 | | has asked for [U/I] that house is not going to look like a |
| 21 | | house. |
| 22 | LEYDIS | God permit. |
| 23 | RELATIVE | A mansion. |
| 24 | LEYDIS | So then it's a mansion and a half, what he's making [U/I]. |
| 25 | RELATIVE | You could see what, how it will be, because everything |
| 26 | | white. White on top and white on the bottom. He's going to |
| 27 | | throw out all the wood. |
| 28 | LEYDIS | Emilson [U/I]. Just anyone is going to go live there and |

they will use it first.

Based on the context of the call, Leydis and the family member appear to be discussing a house under construction that Emilson is funding. Leydis decried the amount of money that Emilson is spending. The family member responded that with the amount of things Emilson wants to get done, the final product won't be a "house," but will be a "mansion."

About two months later, on October 27, 2020, agents intercepted a call between Cruz and an individual who they believe to be his grandmother discussing the house. During the call, the grandmother asked whether Cruz wanted to add "rock or ceramic to the house." She said that she would send pictures. The grandmother also noted that "the bathtub would arrive on Wednesday." Later in the conversation, the two were discussing money. Cruz's grandmother said that she had received 22,000 lempiras from Leydis. Based on the conversation, it is unclear if this meant Leydis sent $22,000 U.S dollars or 22,000 Honduran lempiras (which would equate to roughly $911 at current exchange rates). In other conversations, agents have intercepted calls where individuals discussed "pesos" or "lempiras," when they were discussing denominations of U.S. currency. Either way, it shows that that Cruz and his family members send money back to Honduras where they are setting up for an ultimate return. In the August call referenced above, Leydis even states that life in the United States is too stressful and things are better in Honduras.

In fact, another family member previously represented to this Court that parts of the family anticipated returning to Honduras. Leydis's significant other, Jairo Rodriguez-Martinez, who was charged with drug trafficking offenses in December 2019 informed the Court during his sentencing that his family, including Leydis, and their young daughter, anticipated returning to Honduras. *See* No Cr 19-0707 HSG. In urging the Court to impose a time served sentence, Rodriguez-Martinez noted that the family intended to leave the county.

And while many of Cruz's family members are currently in the United States, as indicated by the Indictment, the most important person to him, his young child, is in Honduras with grandparents. It is unclear why this was not referenced in the bail report. Additionally, his brother lives there as well. In contrast, Cruz's closest family in the United States are alleged to also traffic drugs and send money abroad. When considered in totality, the Cruz family appears to be planning to return to Honduras and

is already making arrangements for their lives there.  No combination of conditions can mitigate the risk of flight here.

### B. The quantities of fentanyl involved in this case endangered the community at large and the defendants' immediate families.

In addition to risk of flight, Cruz poses a significant danger to the community.  As described in the Complaint, this case primarily involves the sale of fentanyl.  The Cruz organization's drug dealing was all encompassing – from selling to individual drug users on the street, to selling larger resale quantities, including several ounces of fentanyl at a time, to resellers.  Cruz preyed on individuals facing addiction to grow his business.   As described in the Complaint, during one intercepted call on October 29, 2020, Cruz boasted to another man that he had just done a "two ounce deal with a new dude."  He went on to say that "the gram customers recommended other good customers who got more."  In essence, Cruz conveyed that smaller drug customers – meaning street-level users who buy small gram quantities of drugs – lead to larger sales because those users refer other business to Cruz.  In order to make more money, Cruz fed the scenes of addiction that play out on the streets of the Tenderloin every day.

At the time of Cruz's arrest, agents seized 765.4 gross grams of suspected fentanyl, 960.6 gross grams of suspected heroin, and 230 gross grams of suspected methamphetamine from the apartment that Cruz shared with his girlfriend and co-defendant Ana Maldonado.[3]  As the Court knows, these are no miniscule quantities.  What it also reveals is the volume of drugs that Cruz can access at any one time.  If released, there is no reason to believe that Cruz could not once more acquire these drugs and peddle them to others.  Selling more drugs would mean that Cruz could easily and quickly acquire cash to flee the country.  The Complaint quotes calls during which Leydis and her brother, co-defendant Ivan Mauro Cruz Mayorquin, discuss the high demand for fentanyl and how quickly they can sell it.  *See* Dkt. 1, Compl. ¶¶ 24-25.  In light of the lethal effects of fentanyl and the sheer volume possessed and trafficking here, the danger to the community if Cruz is released is simply too great.

//

---

[3] These amounts refer to gross weights inclusive of packaging.  Further chemical analysis is being done by the DEA Western Laboratory.

MEMO. I/S/O GOVT'S MOT. TO DETAIN  
20-0480-1 WHA

6

## IV. CONCLUSION

Cruz cannot rebut the presumption of risk of flight and danger to the community. As of the submission of this memorandum, Cruz has proffered no sureties, custodians, or other evidence to Pretrial Services indicating why release should be considered. Even if the Court were to find that Cruz has rebutted the presumption, the record demonstrates by a preponderance of the evidence that no condition or combination of conditions would reasonably assure their appearance for future court proceedings. Cruz's child, family, and future are in Honduras. There is no logical reason as to why he would abide by conditions. Finally, given the drug and quantity at issue, the danger to the community cannot be mitigated. Accordingly, the government joins Pretrial Services in requesting that the Court detain Cruz pending trial.

DATED: December 20, 2020                                   Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_____/s_____
SAILAJA M. PAIDIPATY
Assistant United States Attorney