GEOFFREY HANSEN
Acting Federal Public Defender
Northern District of California
ELISSE LAROUCHE
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:       Elisse_Larouche@fd.org

Counsel for Defendant Cruz Mayorquin

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>EMILSON CRUZ MAYORQUIN,<br><br>　　　　Defendant. | **Case No.:** CR 20–480 WHA<br><br>**DEFENDANT'S SENTENCING MEMORANDUM, MOTION FOR DOWNWARD VARIANCE, AND OBJECTIONS TO PRESENTENCE REPORT**<br><br>**Court:**　　　　Courtroom 8, 19th Floor<br>**Hearing Date:**　December 14, 2021<br>**Hearing Time:**　12:00 p.m. |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.       Mr. Cruz Mayorquin's history and characteristics. .......................................................... 3

           A.     Mr. Cruz Mayorquin is a young, resilient man who has a plan for his future life in Honduras. ................................................................................................... 3

           B.     Growing up, Mr. Cruz Mayorquin wanted for stability, opportunity, and guidance. ............................................................................................................... 5

           C.     Exposed to drugs at an early age and influenced by family, he developed a substance abuse problem himself. ........................................................................ 6

    II.      Mr. Cruz Mayorquin's Criminal History Category is overstated and incorrect. .............. 7

    III.     The nature and circumstances of the offense are extremely serious with severe consequences for the community; Mr. Cruz Mayorquin has demonstrated acceptance of responsibility above and beyond. ........................................................................................ 8

    IV.     A sentence of 24 months is sufficient, but not greater than necessary, to achieve the sentencing goals at 18 U.S.C. § 3553(a)(2). ..................................................................... 9

    V.      Need for sentence imposed to provide educational, vocational, or other correctional treatment. ....................................................................................................................... 10

    VI.     Objections to PSR ........................................................................................................... 11

# TABLE OF AUTHORITIES

**Federal Cases**

*Gall v. United States*,
    552 U.S. 38 (2007) ........................................................................................................... 3

*United States v. Barker*,
    771 F.2d 1362 (9th Cir. 1985) ......................................................................................... 3

*United States v. Carty*,
    520 F.3d 984 (9th Cir. 2008) (en banc) .................................................................. *passim*

*Williams v. New York*,
    337 U.S. 241 (1949) ......................................................................................................... 3

**Federal Statutes**

18 U.S.C. § 3553 ............................................................................................................ 3, 9, 10

21 U.S.C. §§ 841 (b) (B) ........................................................................................................ 1

**State Cases**

*People v. Schulz*,
    66 Cal. App. 5th 887 (2021) ........................................................................................... 11

# INTRODUCTION

About ten years ago, a thirteen-year-old boy left his home country of Honduras. He wanted to go to the United States. He hoped to find opportunity his country couldn't provide. He also hoped to find his mother who had left when he was eight years old. Emilson Cruz Mayorquin found his mother, but arriving in the U.S. at an impressionable age, he was lured by bad influences and without his mother's ability or willingness to provide parental guidance, he became involved in drugs. No one financially supported him and friends taught him to survive by selling drugs. As a teenager, his years were spent between ICE juvenile detention centers, the streets, with friends, and sometimes, time with his mom. When he missed an immigration hearing, he was deported back to Honduras. Unable to fully appreciate the consequences of his actions at such a young age, as a teenager, he came back to the United States and back to his mother, who was involved in drug dealing of her own.

Mr. Cruz Mayorquin's familial guidance in the U.S. was the normalization of drug dealing. Notably, this case involves co-defendants including, Mr. Cruz Mayorquin's mother, uncle, and sister. When the present conduct occurred, Mr. Cruz Mayorquin was approximately 21 to 23 years old. He is now 24 years old and has spent the last year in custody. After waiting for the processing of voluminous discovery and wiretaps in this case, Mr. Cruz Mayorquin pled guilty at his first appearance before this Court, pursuant to a plea agreement, to a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), distribution of heroin. Mr. Cruz Mayorquin has one prior conviction from when he was 19 years old – drug sales for which he was sentenced 180 days' custody to be served at half time. The past year in custody is four times longer than his one and only prior sentence.

Mr. Cruz Mayorquin's conduct in this case is extremely serious as it involves fentanyl and heroin distribution in the Bay Area. There is no dispute that these are serious drugs ravaging our community. The Court, however, should consider the specific mitigating factors here:

- Growing up in poverty with a lack of opportunity in Honduras
- Lack of positive youthful guidance or financial support
- Crossing into the U.S. alone, at 13, to find his mother
- Neglect/inability of his mother to care for him in adolescence
- Family members involved in drug trafficking
- Young age at the time of offense and young age now at 24 years old

- Minimal criminal history
- Untreated substance abuse disorder
- Family reunification with three-year-old son in Honduras
- Punishment of deportation
- Plan to establish his life long-term in Honduras

Mr. Cruz Mayorquin will face the ultimate punishment of banishment when he is deported. Although he been deported before, the circumstances are different now. With this conviction, he faces a serious prison sentence if he is federally prosecuted for illegal reentry. He also now has no possibility of any immigration relief because of his conviction. His family, co-defendants in this case, will also be deported. And his three-year-old son and other family are already living in Honduras. There is nothing left in the U.S. for Mr. Cruz Mayorquin except prison time. He understands this and does not want to come back to the U.S. He has already felt the effects of being unable to provide for and be with his family while incarcerated. Mr. Cruz Mayorquin already has a plan to work for his uncles' roofing business in Honduras, which has been doing very well recently. Although there will be challenges and a gap in his life in Honduras as compared to that in the U.S., he is ready to make his Honduras his permanent home.

As to the applicable sentencing guidelines, the defense objects to the PSR's calculation of Mr. Cruz Mayorquin's offense level and Criminal History Category. After significant negotiation and review of the case, the parties agreed to an offense level of 28 in a plea agreement, whereas the PSR calculates a higher offense level of 30 based on a drug report received later. The Court should adopt the parties' agreed-to offense level in the plea agreement, upon which Mr. Cruz Mayorquin relied in accepting the plea agreement. The defense also objects to the PSR's addition of two criminal history points for being on a criminal justice sentence during the present offense. Pursuant to a change in California law in January 2021 (Assembly Bill 1950), the maximum probation term for the type of offense that Mr. Cruz Mayorquin was convicted of was changed, retroactively, to two years, not five years, and his term would have been terminated before the instant offense. Even if the Court is inclined to find the two points apply, the change in California law is indicative of the lesser severity of the prior offense and the Court should find Mr. Cruz Mayorquin's criminal history is overstated. Accordingly, the defense contends the correct offense level is 23 and CHC is II, resulting in a guideline range of 51-63 months. The defense agrees with probation that Mr. Cruz Mayorquin is

safety-valve eligible and a variance is warranted, but argues a greater variance is warranted.

Mr. Cruz Mayorquin respectfully requests that the Court to impose a sentence of 24 months' custody, after which he will be deported to Honduras.

## ARGUMENT

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). "[T]he sentencing judge [must] consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quotations omitted). The factors listed at 18 U.S.C. § 3553(a) assist the Court in fulfilling this mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). The sentence recommended in the U.S. Sentencing Guidelines is only one factor for district courts to consider in making this judgment, and it may not be weighed more heavily than any other § 3553(a) factor. *Gall*, 552 U.S. at 50; *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).

I.   **Mr. Cruz Mayorquin's history and characteristics.**

   A.   **Mr. Cruz Mayorquin is a young, resilient man who has a plan for his future life in Honduras.**

At 24 years old, Mr. Cruz Mayorquin has a lot of life ahead of him and he has a plan for living a law-abiding life with his family in Honduras, his home country. Mr. Cruz Mayorquin's three-year-old son, Ezan, lives in Honduras under the care of his great-grandmother. PSR ¶ 54. Ezan had to be sent to Honduras because his mother, co-defendant Ana Maldonado, felt too stressed to care for the child here in the United States. *Id.* Disappointed, but trying to support his partner, Mr. Cruz Mayorquin helped arrange for his grandmother to care for his son. He maintained contact with his son via Facetime as often as he could but since his incarceration, his conversations with his son have been far and few between, strained by limited jail calls at Santa Rita and challenges making international calls. After not having a father in his life and being absent in his son's life during the past year of incarceration, Mr. Cruz Mayorquin is anxious to return to Honduras and be with Ezan. He is anxious to see his son grow and develop and to be a positive role model for his son. Reflecting on his life

circumstances during the past year in custody, Mr. Cruz Mayorquin realizes he has not been the role model he wants to be and he is losing precious time with his young son. As Ezan's caretaker, Mr. Cruz Mayorquin's grandmother, is getting older, she needs assistance caring for her Ezan. With Mr. Cruz Mayorquin at home in Honduras, there will be important family reunification and the cycle of an absent father that may have led to some of Mr. Cruz Mayorquin's wrong turns can be stymied and stopped.

A career with his uncles in their roofing and construction business also awaits Mr. Cruz Mayorquin in Honduras. PSR ¶ 55. Mr. Cruz Mayorquin is ready to contribute to their construction business and develop a skill that he can use to support his family going forward. *Id*. Mr. Cruz Mayorquin is ready for a safe, lawful future, albeit a potentially humble one at first. He also is considering going back to school after having dropped out after sixth grade in Honduras. PSR ¶ 62. With an interest in architecture and building plans, he can use the construction experience he will gain with his uncles, along with additional schooling, to make construction work a more financially stable and long-term plan. *Id*. This career and educational path will give him a lawful way to provide for his family and be present for his son's upbringing in Honduras.

Along with his young son and grandmother, Mr. Cruz Mayorquin has other family who support him as evidenced by the letters to this Court. Larouche Decl. ¶ 2, Ex. A. He will be around people who care for him and that will keep him grounded.

There are also strong reasons to not return to the U.S. – he has now pleaded guilty to a drug offense and he cannot obtain immigration relief. There are no career options for him here without status and with his record. Defense counsel has also specifically advised him of the prison sentence he would face, given his two drug convictions, were he prosecuted for illegal re-entry along the border. Mr. Cruz Mayorquin does not want to risk losing years, or his entire life, coming back to the United States when he can live with his family and his son and be gainfully employed in Honduras.

    **B.    Growing up, Mr. Cruz Mayorquin wanted for stability, opportunity, and guidance.**

        **1.    As an adolescent, Mr. Cruz Mayorquin, left behind by his parents, made a grueling, perilous journey from Honduras to the U.S.**



"La Bestia," the Beast. A freight train that, inside carries goods from Central America through Mexico but atop, and on platform edges, carries hundreds, thousands, of unaccompanied minors trying to reach the U.S. This harrowing train route and its vulnerable riders have been the subject of worldwide news,[1] migration policy research,[2] and a documentary.[3] The train is known for frequent derailments, which along with the dangers of getting onto the train, are responsible for thousands of deaths, loss of limbs, and other injuries.[4] "And when the train itself is not the threat, it's the smugglers, thieves, policemen, or soldiers who frequently threaten, blackmail or attack the people on board."[5] La Bestia, is how a thirteen-year-old Emilson Cruz Mayorquin made his way to the U.S. He made the 25-day journey on foot, train, and through the desert while hungry, freezing and alone, but for a friend or two his age. Larouche, Decl. ¶ 3.

    Why would a thirteen-year-old leave the family he did have and make this treacherous journey alone? At his young age, there was nothing to lose with no economic opportunity, rampant violence, and your one parent already in the U.S. And even at that young age, Mr. Cruz Mayorquin wanted to be the man who provided for the family—a role a father may have played had he had one in his life.

---

[1] Wilson Sayre, *Riding 'The Beast' Across Mexico To the* https://www.npr.org/sections/parallels/2014/06/05/318902 u-s-border; Patrick J. McDonnell, *As Mexico cracks down known as La Bestia*, Los Angeles Times, June 2, 2019, ht americas/la-fg-mexico-la-bestia-20190602-story.html

[2] Rodrigo Dominguez Villegas, *Central American Migra and Government Responses*, Migration Policy Institute, S https://www.migrationpolicy.org/article/central-american bestia%E2%80%9D-route-dangers-and-government-responses

[3] Pedro Ultreras, *La Bestia*, 2010, https://www.amazon.com/Bestia-Beast-English-Subtitled/dp/B006FZM7PA

[4] Valeria Luiselli, *Riding 'the beast': child migrants reveal the full horror of their journeys to America*, The Guardian, Oct. 5, 2017, https://www.theguardian.com/inequality/2017/oct/05/riding-the-beast-child-migrants-reveal-full-horror-of-their-journeys-to-us

[5] *Id*.

> **2.    Mr. Cruz Mayorquin had some loving family, but they could not provide for him growing up.**

Fortunate enough to have some loving family members, Mr. Cruz Mayorquin was primarily raised by his maternal grandmother. PSR ¶ 52. He encountered struggles from an early age, however, that are noted in the Adverse Childhood Experiences (ACEs) score as contributing to higher risk for mental health, economic health, and social health issues due to childhood trauma. PSR ¶ 59. Mr. Cruz Mayorquin never knew his father and it does not seem there was a strong male role model in his life. *See* PSR ¶¶ 51, 52. Later in life, the man his mother was involved with and that Mr. Cruz Mayorquin did know, was in fact prosecuted in federal court for drug dealing.[6] Mr. Cruz Mayorquin's mother, and now co-defendant, left for the U.S. when he was only eight years old. PSR ¶ 52.

Mr. Cruz Mayorquin also lacked other stable foundations in his life. While the family had food to eat in Honduras, he recalls that sometimes it was not enough. *Id*. As to education, Mr. Cruz Mayorquin only completed the sixth-grade. PSR ¶ 53. He then went to the U.S. where a strong foundation was even more absent.

> **C.    Exposed to drugs at an early age and influenced by family, he developed a substance abuse problem himself.**

Mr. Cruz Mayorquin came to the United States to be reunited with his mother and find opportunity. At an age where other thirteen-year-olds have access to school, sports, instruments, teachers, and supportive parents, Mr. Cruz Mayorquin had access to drugs. Where one would expect a parent to intervene with their child, it appears his mother was either unable or unwilling to assert any positive parental guidance. This neglect on the part of his mother led to his untreated substance abuse problem.

Mr. Cruz Mayorquin acknowledges the impact his substance abuse has had on his behavior and the instant offense. PSR ¶¶ 60, 61. At age thirteen and fourteen, as he began his life in the U.S., Mr. Cruz Mayorquin began using alcohol and marijuana. PSR ¶ 60. He used marijuana daily from thirteen until the instant arrest. *Id*. Cocaine was also Mr. Cruz Mayorquin's drug of choice, a drug he

---

[6] Mr. Cruz Mayorquin's mother, Leydis Yaneth Cruz, is noted as the wife of a defendant, Jairo Noel Rodriguez-Martinez, sentenced for drug dealing, last year in federal court. 4:19-cr-00707-HSG, Dkt. 36. This is another example of negative familial influences involved in drug dealing.

SENTENCING MEMORANDUM AND OBJECTIONS TO PRESENTENCE REPORT
*CRUZ MAYORQUIN*, CR 20–480 WHA
6

began using at just fifteen years old. *Id*. Using these substances daily and weekly, while as a teenager his brain and reasoning were still developing, caused poor behaviors and clouded decision-making. Now, however, after a year in custody, away from the streets and drugs, Mr. Cruz Mayorquin has had time to obtain sobriety and clarity. *See* PSR ¶ 61. He sees how using drugs hindered him from seeing the consequences of his choices and how his use negatively impacted his relationship with his girlfriend. *Id*.

Unfortunately, it is likely, in part, that because Mr. Cruz Mayorquin did not have legal status in the U.S., earlier contacts with law enforcement did not result in programming to address substance abuse. It is possible that early intervention programming aimed at drug use could have made a difference for this young man. Still, with the clarity of a sober year at Santa Rita Jail during the pandemic and with many years of life ahead of him, Mr. Cruz Mayorquin wants to lead a sober life and is interested in substance abuse treatment.

## II. Mr. Cruz Mayorquin's Criminal History Category is overstated and incorrect.

Mr. Cruz Mayorquin has only one prior conviction for which he served approximately 90 actual days in jail and yet, he is in CHC III because the PSR assesses two points for committing the instant offense while on probation. PSR ¶ 39. That sole, prior conviction is for drug sales, when he was 19 years old, for which he was sentenced to five years' probation with the first 180 days to be served in custody, but at half time, resulting in only 90 days actually served. PSR ¶ 37. Mr. Cruz Mayorquin's criminal <u>history is overstated. For perspective, Mr. Cruz Mayorquin is in a higher CHC than someone who committed an assault or other violent crime and received a sentence of ten years. He is in the same CHC as someone who was convicted of two crimes yielding five or ten-year terms a piece.</u> Mr. Cruz Mayorquin is not at that level of criminal history and the Court should not treat him in line with those more serious offenders.

The government points to Mr. Cruz Mayorquin's other arrests to argue that his criminal history is either correct or underrepresented, but a close look tells a story consistent with a poor, unstable young person with a substance abuse problem, not a seasoned criminal. First, none of the offenses resulted in a conviction and should not be used as a proxy for such. Second, Mr. Cruz Mayorquin's two listed criminal conducts and the pending charge are from when he was a teenager at 14, 15, and

then 18 years old. PSR ¶¶ 41, 42, 43. At 14 years old, the incident involved essentially a fight about recording someone selling drugs. PSR ¶ 41. At 15 and 18, the incidents involved hand-to-hand drug sales. PSR ¶ 42, 43.[7] All but one of the listed arrests are immigration-related and three of the five occurred when he was very young at 14, 15, and 16 years old. PSR ¶¶ 44–49. The one non-immigration arrest is a drug sale from when he was 18 years old. PSR ¶ 47. Indeed, Mr. Cruz Mayorquin has had his share of contacts with law enforcement. But they arise in the context of the complete absence of parental or other familial supervision or guidance and largely, while Mr. Cruz Mayorquin fended for himself as a teenager. Although these contacts did not deter him, which the government argues shows the need for a higher sentence, without school, home, stability, or government resources, it is hard to expect more from this teen trying to survive the only way he knew how. At a minimum, these contacts do not signal a seasoned or hardened criminal. Rather, Mr. Cruz Mayorquin's criminality is reflected by his only actual conviction–one prior conviction for which he spent 90 days in jail. He also is only 24 years old and is it a pivotal moment to change his conduct having been charged with this serious federal offense.

### III. The nature and circumstances of the offense are extremely serious with severe consequences for the community; Mr. Cruz Mayorquin has demonstrated acceptance of responsibility above and beyond.

Along with his six other co-defendants, Mr. Cruz Mayorquin engaged in the distribution of heroin and fentanyl in the San Francisco Bay Area. Mr. Cruz Mayorquin also relied on his co-defendant and mother for cocaine sources. PSR ¶ 12. He would sometimes sell on the street, sometimes provide to others to sell, and, along with his mother and sister, sold to undercover agents on several occasions. PSR ¶ 14. The drug distribution was one in which Mr. Cruz Mayorquin's mother worked and organized with her young children – Mr. Cruz Mayorquin and his sister – and their significant others as a family business. Despite these negative influences, Mr. Cruz Mayorquin realizes the harm inflicted on the community and those struggling with substance abuse cannot be understated and he acknowledges his conduct was serious.

Mr. Cruz Mayorquin has reflected on his conduct, noting how it was sad to see people on the

---

[7] A motion was filed by the District Attorney in Utah to recall the warrant. Larouche Decl. ¶ 5.

SENTENCING MEMORANDUM AND OBJECTIONS TO PRESENTENCE REPORT
*CRUZ MAYORQUIN*, CR 20–480 WHA
8

street dealing with addiction. PSR ¶ 23. He understands the wrongfulness of his conduct. *See id*. At the time, however, without stability, a home, education, legal status to work, positive family influences, or language skills, and while using drugs himself, it was all he could think of and the only example set on how to make money to help his poor family in Honduras. *Id*. Had Mr. Cruz Mayorquin had even a few of the factors listed above as a foundation in his life, things may have been very different. Now, Mr. Cruz Mayorquin sees that his choices, while they provided money, they have kept him from his young son – "I feel bad because I should be there with him. I am missing the important moments in his life." *Id*.

Mr. Cruz Mayorquin has also shown his understanding of the seriousness of his conduct by his noteworthy acceptance of responsibility. This case involved voluminous discovery in terms of wiretaps, surveillance, and other matters, much of it in the Spanish language. Mr. Cruz Mayorquin chose not to contest anything in his case and agreed to multiple continuances and written status updates to the court for judicial economy. His first appearance before this Court was to plead guilty pursuant to a plea agreement with the government. The Court should consider Mr. Cruz Mayorquin's noteworthy acceptance and willingness to proceed to sentencing first, among seven co-defendants, in fashioning the appropriate sentence.

**IV.  A sentence of 24 months is sufficient, but not greater than necessary, to achieve the sentencing goals at 18 U.S.C. § 3553(a)(2).**

A sentence of 24 months' prison is sufficient in this case because the sentence, coupled with the ultimate punishment of Mr. Cruz Mayorquin's deportation and banishment from the United States, is a significant sentence that will deter him and others from committing the same offense. Mr. Cruz Mayorquin has already been in custody at Santa Rita Jail for a year. While there, he's been subject to curtailed services and limited mobility due to the COVID-19 pandemic. His health and safety have also been at greater risk. Mr. Cruz Mayorquin's isolation and the difficulty of his incarceration has been intensified by conditions that forbade him from speaking with his close family members, because they are also his co-defendants. Taken together, this has left Mr. Cruz Mayorquin in an extremely lonely and isolated state. The time he's served so far, and another year in custody that is likely also going to be under strict conditions due to the pandemic is significant and severe. A

sentence of 24 will be specifically severe for him because it will be <u>eight times more than the only prior time he's spent in custody of 90 days. Already, the year he's spent in custody is four times more than any prior time in custody.</u>

Further, because of his this drug conviction, Mr. Cruz Mayorquin will be deported back to Honduras *after* he finishes his prison sentence on this matter. He will be barred from all immigration relief and will not be able to obtain legal status ever in the U.S. Also, should he ever return and be apprehended and prosecuted for illegal re-entry, he will face a prison sentence of numerous years because of his prior convictions. That danger, of another prison sentence and any danger as a result of this offense, applies not just to Mr. Cruz Mayorquin, but to his entire family in this case. All of his family members will have a strong incentive to stay in Honduras, be reunited, and not return to the U.S.

A sentence of 24 months, along with deportation, reflects the seriousness of the offense, promotes respect for the law, and provides deterrence to criminal conduct. Mr. Cruz Mayorquin's deportation and the compelling reasons for him to stay in Honduras also protect the public from any further crimes by him.

V.  **Need for sentence imposed to provide educational, vocational, or other correctional treatment.**

A goal of a prison sentence under 18 U.S.C. § 3553(a)(2)(D) is that the prison term will assist the incarcerated person, either with vocational training, substance abuse treatment, or other services that would promote rehabilitation. However, because Mr. Cruz Mayorquin is not a citizen and will be deported, he will not be eligible for nearly any resources. Unlike a citizen, he cannot be eligible for RDAP. He will likely be barred from other trade skills classes or resources that are saved for citizens. Given this reality, any prison sentence imposed is merely warehousing Mr. Cruz Mayorquin as a punishment and message of deterrence. This Court should consider that those two goals can be adequately served by a prison term of 24 months that have and will be served in more severe conditions due to the pandemic. Further, the deportation and related consequences, are the most extreme punishment and message of deterrence. Additional prison time will not further the sentencing goals.

### VI. Objections to PSR

As discussed above, the defense objects to the offense level of 30 in the PSR because the parties agreed, pursuant to a plea agreement, that the offense level is 28. Mr. Cruz Mayorquin relied on that agreement in choosing to plead guilty and foregoing other rights. The Court should follow the parties' agreed-upon offense level of 28.

Mr. Cruz Mayorquin also objects to his categorization in CHC III, due to the PSR's assessment of two additional points for committing the instant offense while on probation. Mr. Cruz Mayorquin was sentenced in July 2017 for sale/offer to sell controlled substance and was sentenced to five years' probation. PSR ¶ 37. However, a change in law by Assembly Bill 1950, enacted in January 2021, changed the maximum probation sentence for offenses like the one Mr. Cruz Mayorquin was convicted of to two years, instead of five years. Larouche Decl. ¶ 5, Ex. B. California state courts have clarified that the effect of AB 1950 and amendment to California law 1203.1 applies retroactively. *People v. Schulz*, 66 Cal. App. 5th 887, 896 (2021), review denied (Sept. 29, 2021) (collecting cases and holding that statutory amendment limiting felony probation to two-year maximum was an ameliorative change subject to Estrada presumption of retroactivity). Accordingly, Mr. Cruz Mayorquin's probation term could have only extended to July 2019. This Court should find that Mr. Cruz Mayorquin was either not on probation when the present offense occurred or find his criminal history overstated as a result of the change in California law limiting probation terms. The Court should also note that prior to the PSR, both the government and defense counsel believed Mr. Cruz Mayorquin had no criminal history points and was in CHC I. Mr. Cruz Mayorquin relied on that information and now, faces a much different circumstance in CHC III.

With these two objections, the defense contends the correct guidelines are offense level 23 and CHC II, resulting in a guideline range of 51-63.

### CONCLUSION

Mr. Cruz Mayorquin committed the instant offense in his early 20s and is still a young man that despite an adolescence marked by lack of parental guidance and early exposure to drugs, has a real future with family and lawful work ahead of him. He has accepted that his future cannot be in the United States and he has accepted responsibility for his serious conduct in this case. A sentence of 24

months' custody, followed by his deportation, is a severe punishment for him given his history and it will adequately address the seriousness of his offense, provide a just punishment, and deter criminal conduct. Mr. Cruz Mayorquin respectfully requests that the Court impose a custodial sentence of 24 months' custody.

Dated:    December 7, 2021

Respectfully submitted,

GEOFFREY HANSEN
Acting Federal Public Defender
Northern District of California

                /S
ELISSE LAROUCHE
Assistant Federal Public Defender